FILED
COURT OF APPEALS
DIVISION II

2015 MAR -3 AM 8:35

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| RICHARD SORRELS, a single person, and CHRISTOPHER SORRELS, a single person, | No. 45043-7-II |
| Appellants, | |
| v. | |
| MAVI MACFARLANE, a single person; SAM CHUI (f/k/a XIANJU XUI) (a/k/a XIANJU CUI), individually or as a marital community, | UNPUBLISHED OPINION |
| Respondents, | |
| KEY PENINSULA REAL ESTATE LLC, a/k/a TWO VAULTS GALLERY and/or MAVI GALLERY, a Washington limited liability company; AGACON LLC, a Washington limited liability company; GINTZ AND TONER LLC, a Washington limited liability company; DAVID GINTZ, individually or as a marital community; TERRY EASTWOOD, individually or as a marital community; DAVE EASTWOOD, individually or as a marital community; JOHN DOE 1-10 individually or as a marital community; and any other persons claiming any interest in the subject real property, | |
| Defendants. | |

No. 45043-7-II

JOHANSON, C.J. — In this long-standing property dispute, Richard and Christopher Sorrels (Sorrels), appeal a superior court order granting summary judgment in favor of Sam Chui dismissing Sorrels's claims for adverse possession, trespass, and conversion. Sorrels also appeals the superior court's order issuing a writ of restitution and the declaratory judgment ruling that Sorrels had abandoned certain personal property. We hold that (1) the superior court did not abuse its discretion by declining to consider Sorrels's CR 56 and CR 41 motions, (2) the doctrine of res judicata bars consideration of Sorrels's adverse possession claim, (3) Sorrels fails to provide argument to support his claims for trespass, conversion, unlawful entry, and forcible detainer under RAP 10.3(a)(6), (4) Sorrels failed to perfect the record regarding his writ of restitution claim, and (5) the superior court properly dismissed his claims with prejudice in its order granting final judgment. We affirm.

FACTS

I. PREVIOUS LITIGATION

This appeal, like the one before it, arises from the sale of real property.[1] Sorrels sold a parcel of real property in Gig Harbor to David Brown in 1992. In conjunction with the sale, Brown executed a promissory note. As security for the note, Brown executed a deed of trust (1992 deed) against the Gig Harbor property. According to Sorrels, Brown did not pay the 1992 note when it matured on August 3, 1994. Nevertheless, Sorrels took no action to collect the note or to foreclose on the 1992 deed at that time.

---

[1] The majority of the background facts are taken from *Westar Funding, Inc. v. Sorrels*, 157 Wn. App. 777, 239 P.3d 1109 (2010), a published decision by this court concerning an earlier action involving the same parties to quiet title to the same property that is the subject of this appeal.

2

In 1995, Brown executed a statutory warranty deed (1995 deed) conveying the Gig Harbor property to The R.E.S. Trust. Brown specifically conveyed the Gig Harbor property to Sorrels as trustee for The R.E.S. Trust. As a part of the transaction, Sorrels and Brown signed an excise tax affidavit noting that Brown executed the 1995 deed conveying the Gig Harbor property to The R.E.S. Trust, and expressly to Sorrels as trustee, in lieu of foreclosure.

In 2002, acting in his capacity as The R.E.S. Trust trustee, Sorrels borrowed money from Westar Financial, Inc. To secure the loan, The R.E.S. Trust executed a promissory note and a deed of trust against the Gig Harbor property (2002 deed) in favor of Westar. In his loan application, Sorrels represented that the Gig Harbor property was free and clear of encumbrances. He further verified that the loan would be secured by "'a first mortgage or deed of trust on the property.'" *Westar Funding, Inc. v. Sorrels*, 157 Wn. App. 777, 780, 239 P.3d 1109 (2010).

The R.E.S. Trust defaulted on the Westar note. On April 13, 2007, Westar foreclosed on its 2002 deed by a nonjudicial trustee's sale. Chui, who had funded Sorrels's loan through Westar, purchased the property at the sale for the debt owed. The effect of the sale and transfer of the deed was to vest title in Chui and to divest The R.E.S. Trust from title to the property.

Despite the nonjudicial foreclosure on the Westar deed of trust, Sorrels attempted to go forward with a separate nonjudicial foreclosure sale based on the 1992 deed executed by Brown. On January 20, 2009, Westar and Chui filed a motion for summary judgment seeking to quiet title of the Gig Harbor property. The trial court granted Westar and Chui's motion.

Sorrels appealed to this court, which ruled that Chui legally acquired the Gig Harbor property through Westar's nonjudicial foreclosure sale and that Chui had the right to maintain an action to quiet title as the record owner of the property. *Sorrels*, 157 Wn. App. at 786. We

concluded that the trial court properly granted summary judgment and quieted title in Chui's favor because the statute of frauds and the statute of limitations barred Sorrels's claims. *Sorrels*, 157 Wn. App. at 786. We further determined that Sorrels had presented no legally debatable issues or legitimate arguments and that his appeal was frivolous. *Sorrels*, 157 Wn. App. at 787. Accordingly, we awarded attorney fees under RAP 18.9(a).

## II. CURRENT LITIGATION

On December 27 2011, Sorrels filed suit, naming Chui and several other parties as defendants.[2] Sorrels sought to quiet title to the same Gig Harbor property, this time under a theory of adverse possession. Sorrels also alleged other causes of action, including trespass, conversion, unlawful entry, and forcible detainer.

In July 2012, Chui filed a summary judgment motion to dismiss all causes of action against him. The superior court continued the hearing until November 9. On October 31, Chui filed a motion seeking a writ of restitution, which was heard in conjunction with the summary judgment proceeding. Sorrels failed to timely respond to either of Chui's motions. Sorrels instead filed a CR 56(f) motion to continue, but Sorrels failed to confirm his motion for the hearing, so it was never on the superior court's docket to be heard. Sorrels filed his response to Chui's motion for a writ of restitution one day before the hearing. The superior court refused to consider either of

---

[2] Sorrels named several defendants, but there are only three parties identified as respondents for purposes of this appeal. Furthermore, Sorrels's arguments on appeal appear to relate only to Chui despite the fact that he also names Chui's wife, Mingxia Wang, and Mavi Macfarlane, who is Chui's real estate agent. Both Wang and Macfarlane filed respondent's briefs, but we refer to the parties collectively as "Chui."

4

Sorrels's responsive filings and granted both of Chui's motions, again quieting title in Chui and deeming Sorrels's case frivolous.

Furthermore, Sorrels had previously filed a partial voluntary dismissal motion in which Sorrels asserted his willingness to dismiss his adverse possession claim as to Chui. But Sorrels did not note the motion for hearing or otherwise bring it to the superior court's attention.

On January 4, 2013, Sorrels and the remaining parties entered an agreed dismissal order on all claims against all defendants except for Sorrels's claim for conversion, which the parties agreed to submit to binding arbitration within 90 days. The order established that Sorrels had 80 days to remove personal property[3] and that failure to do so would result in the property being deemed abandoned, permitting Chui to dispose of it.

When Sorrels failed to timely remove his property, Chui filed a declaratory judgment motion asking the court to declare Sorrels's personal property abandoned. The superior court, at the behest of Sorrels's attorney, granted Chui's motion dismissing all claims against all defendants, with prejudice. The superior court also declared that Sorrels had abandoned the personal property he left on the Gig Harbor property. Sorrels appeals the superior court's orders granting summary judgment in favor of Chui, denying reconsideration of that ruling, issuing the writ of restitution, and the May 24 final judgment.

---

[3] In the two-story, unfinished structure, Sorrels had accumulated "useless old stuffs everywhere from floor to almost the ceiling." Clerk's Papers at 63. He apparently kept old engines, computers, printers, and furniture in such an amount that the door was difficult to open.

ANALYSIS

I. MOTIONS

A. CR 56(F) MOTION TO CONTINUE

Sorrels argues that the superior court should have granted his CR 56(f) motion to continue the summary judgment hearing and his motion for voluntary dismissal of his adverse possession claim under CR 41. Sorrels asserts that the superior court erred because CR 56(f) imposes a mandatory duty to continue the hearing because discovery interference prevented him from being able to respond to Chui's motion in a timely fashion and because his motion to dismiss should have been granted as a matter of right. We hold that the superior court did not abuse its discretion by striking Sorrels's CR 56(f) motion to continue the summary judgment hearing and that the superior court did not err by failing to grant Sorrels's motion to dismiss because Sorrels failed to bring that motion to the trial court's attention.

CR 56(f) provides,

> **When Affidavits Are Unavailable.** Should it appear from the affidavits of a party opposing the motion that he cannot, for reasons stated, present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make any such other order as is just.

Former Pierce County Superior Court Local Rule (PCLR) 7(a)(8) (2011) provides in pertinent part,

> All motions shall be confirmed by the moving party during the week of the hearing, but no later than 12:00 noon two court days prior to the hearing. Attorneys and any self-represented party shall confirm motions . . . in accordance with the procedures adopted by the Pierce County Superior Court Clerk's Office . . . . The court may strike motions that are not timely confirmed.

The trial court has considerable latitude in managing its court schedule to insure the orderly and expeditious disposition of cases. *Idahosa v. King County*, 113 Wn. App. 930, 937, 55 P.3d 657 (2002), *review denied*, 149 Wn.2d 1011 (2003). Decisions enforcing this authority are reviewed for an abuse of discretion. *Idahosa*, 113 Wn. App. at 937.

Sorrels failed to confirm his CR 56(f) motion as required by former PCLR 7(a)(8). Pursuant to the terms of the rule, it was within the superior court's discretion to strike the motion. Moreover, the superior court had already continued Chui's motion for summary judgment over three months.

Sorrels's argument that CR 56(f) imposes a mandatory duty to grant continuances is equally unavailing. The language of the aforementioned rule is clearly discretionary. Under the rule, a superior court *may* order a continuance to permit additional discovery to CR 56(f). Accordingly, considering the superior court's wide latitude to manage its schedule to insure orderly disposition of cases, *Idahosa*, 113 Wn. App. at 937, we hold that the court did not abuse its discretion by striking Sorrels's CR 56(f) continuance motion.

## B. CR 41 MOTION TO DISMISS

Sorrels contends further that the trial court erred by failing to grant his motion to dismiss because CR 41[4] requires a court to do so if such a motion is filed and brought to the attention of the trial court before a hearing on a motion for summary judgment begins. In support of this proposition, Sorrels relies on *Greenlaw v. Renn*, 64 Wn. App. 499, 824 P.2d 1263 (1992).

*Greenlaw*, however, is distinguishable because Greenlaw filed his motion to dismiss and

---

[4] CR 41(a)(1)(B) provides that any action shall be dismissed by the court upon motion of the plaintiff at any time before the plaintiff rests at the conclusion of his opening case.

brought it to the court's attention. There, we said, "In our judgment, where a motion for a voluntary nonsuit is filed *and called to the attention of the trial court* before the hearing on a summary judgment motion has started, the motion must be granted as a matter of right." *Greenlaw*, 64 Wn. App. at 503.

But here, although Sorrels did file a motion to dismiss pursuant to CR 41, nothing in the record establishes that Sorrels ever called the motion to the attention of the trial court. Sorrels did not note the motion for hearing before the superior court nor did he mention the motion before or during the summary judgment hearing. Thus, Sorrels never asked the court to make a ruling. We hold that no error occurred for this reason.

## II. RES JUDICATA AND ADVERSE POSSESSION

Sorrels next contends that the superior court erred by granting summary judgment and quieting title in favor of Chui because Sorrels established a claim to the property by adverse possession.[5] Sorrels also appears to argue that the foreclosure and subsequent trustee sale could not have conveyed a possessory right to Chui because that right remains with Sorrels's son, Christopher Sorrels, as the trust beneficiary.[6] Because Sorrels's claims involve the same cause of

---

[5] Sorrels also appears to argue that genuine issues of material fact exist regarding his claims against Chui for conversion, trespass, unlawful entry, and forcible detainer. But Sorrels makes no coherent argument related to these claims and cites no authority in support of his position contrary to RAP 10.3(a)(6).

[6] Sorrels essentially argues that he should not have been allowed to mortgage the property as trustee under the terms of the trust, and that by doing so, he acted contrary to the interests of his son as the trust beneficiary. Therefore, Sorrels claims that because his son was not provided notice of the trustee sale, no title properly passed to Chui.

action, subject matter, and parties as the previous litigation, res judicata precludes our consideration of these claims on the merits.[7]

Whether res judicata bars an action is a question of law we review de novo. *Ensley v. Pitcher*, 152 Wn. App. 891, 899, 222 P.3d 99 (2009). Res judicata is a doctrine of claim preclusion that bars relitigation of a claim that has been determined by a final judgment. *Storti v. Univ. of Wash.*, 181 Wn.2d 28, 40, 330 P.3d 159 (2014). Filing two separate lawsuits based on the same event is known as "claim splitting" and is precluded in Washington. *Ensley*, 152 Wn. App. at 898-99.

The threshold requirement of res judicata is a valid and final judgment on the merits in a prior suit. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 865, 93 P.3d 108 (2004). Res judicata applies where the subsequent action involves (1) the same subject matter, (2) the same cause of action, (3) the same persons or parties, and (4) the same quality of persons for or against whom the decision is made as did a prior adjudication. *Williams v. Leone & Keeble, Inc.*, 171 Wn.2d 726, 730, 254 P.3d 818 (2011).

A. FINAL JUDGMENT AND SAME SUBJECT MATTER

There is no question that there is a valid and final judgment on the merits in a prior suit. In Chui's 2009 action to quiet title, the superior court granted summary judgment in his favor and that ruling was affirmed on appeal. *Sorrels*, 157 Wn. App. at 786. Similarly, the 2009 action and

---

[7] We also note that once Chui moved for summary judgment with supporting pleadings, the burden shifted to Sorrels to show that there was a genuine dispute as to a material issue of fact. But Sorrels failed to timely file any responsive pleadings to Chui's summary judgment motion, and, thus, he completely failed to sustain his burden. However, we address res judicata because the parties do so.

this case undoubtedly involve the same subject matter. The 2009 case involved a suit by Chui to quiet title to a parcel of real property in Gig Harbor notwithstanding Sorrels's attempt to prove that he retained a possessory interest in the same property. And here, despite the prior ruling by this court, Sorrels now attempts to prove that he is entitled to the same property under a different theory.

## B. SAME CAUSE OF ACTION

In considering whether the same cause of action exists for purposes of res judicata, our courts have identified factors to consider as analytical tools. *Ensley*, 152 Wn. App. at 903. These include determinations as to whether (1) the rights or interests established in the prior judgment would be destroyed or impaired by the prosecution of the second action, (2) substantially the same evidence is presented in the two actions, (3) the suits involved infringement of the same right, and (4) the two suits arise out of the same transactional nucleus of facts. *Ensley*, 152 Wn. App. at 903.

Here, prosecution of a second action either involving Sorrels's adverse possession theory or some other theory consistent with his right to continued property ownership would necessarily impair rights or interests established in the prior judgment. At least temporarily, Chui's quiet title and status as legal property owner after the 2007 trustee sale would be called into question a second time. This case and the previous action also involve infringement of the same right, that is, the rightful owner's opportunity to possess the property. Additionally, Sorrels does not present, and the record does not reveal, any evidence different from that involved in the first case. The record shows that Sorrels secured a loan using the Gig Harbor property as collateral, that Sorrels defaulted on that loan, and that Chui purchased the property at the ensuing foreclosure sale. This is the same transactional nucleus of facts that gave rise to the first suit.

10

We hold that Sorrels's new theories constitute the same cause of action as his previous attempt to prevent Chui from obtaining quiet title.

## C. SAME PARTIES

The parties involved in this cause of action are identical to those involved in the first case for purposes of res judicata. Although he named other parties in the current case for purposes of his various claims, Sorrels's own admission in the record establishes that his adverse possession claim applied only to Chui. Moreover, to the extent that Sorrels could argue that the parties are different because he amended his original complaint to add his son Christopher Sorrels as a plaintiff, the outcome would not change because even a nonparty to a prior suit may have a concurrence of identity if the nonparty is in privity with a party. *Feature Realty, Inc. v. Kirkpatrick & Lockhart Preston Gates Ellis, LLP*, 161 Wn.2d 214, 224, 164 P.3d 500 (2007).

Regarding the question of privity, our courts have said that privity does not arise merely by virtue of the fact that persons as litigants are interested in the same question or in proving or disproving the same state of facts. *Loveridge v. Fred Meyer, Inc.*, 125 Wn.2d 759, 764, 887 P.2d 898 (1995). Rather, "[p]rivity within the meaning of the doctrine of res judicata is privity as it exists in relation to the subject matter of the litigation, and the rule is construed strictly to mean parties claiming under the same title. It denotes mutual or successive relationship to the same right or property." *Loveridge*, 125 Wn.2d at 764.

Here, Sorrels does not explain how his son is an interested party or what role his son occupies in the present litigation. But Sorrels appears to contend that both he and his son have a right to the property by adverse possession and implies that his son maintains some possessory interest as beneficiary of the trust that formerly owned the property. Accordingly, we conclude

11

that Sorrels and his son are in privity for purposes of res judicata because they have a mutual or successive relationship to the same property.

## D. SAME QUALITY OF PERSONS

The fourth element of res judicata simply requires a determination of which parties in the second suit are bound by the judgment in the first suit. *Ensley*, 152 Wn. App. at 903 (explaining that the "identity and quality of parties" requirement is better understood as a determination of who is bound by the first judgment—all parties to the litigation plus all persons in privity with such parties (citing 14A *Karl B. Tegland, Washington Practice: Civil Procedure* § 35.27, at 464 (1st ed. 2007))). This determination is straightforward here because each of the parties involved in the current action were either parties to the previous litigation or, as explained above, are in privity with those parties.

Chui has established each of the elements necessary to invoke res judicata to bar Sorrels's claim. Our courts have consistently said that res judicata applies "except in special cases, not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, *exercising reasonable diligence,* might have brought forward at that time." *Kelly-Hansen v. Kelly-Hansen*, 87 Wn. App. 320, 328-29, 941 P.2d 1108 (1997).

If Sorrels believed that he had established an ownership interest in the Gig Harbor property by adverse possession or if he understood, by virtue of the circumstances leading to the trustee sale, that Chui could not have obtained the right to possess the property, Sorrels should have raised those issues as part of the original action. We apply res judicata and refuse to reach the merits of Sorrels's most recent theory.

### III. WRIT OF RESTITUTION

Sorrels next argues that the trial court erred by granting Chui's motion for a writ of restitution. Sorrels contends that Chui's request for a writ of restitution should have been barred by the doctrine of res judicata because a similar request was denied previously. Sorrels asserts further that the superior court lacked jurisdiction to enter the writ because Chui did not file a proper summons and complaint when Chui filed his separate unlawful detainer action and because Chui served documents by mail instead of personally, as required by statute.

But the record contains no copy of Chui's summons and complaint nor is there any reference to a previous refusal to issue a writ of restitution. Furthermore, contrary to Sorrels's position, the applicable statute, RCW 59.12.040, explicitly permits service by mail as long as a copy is also posted at the premises. There is nothing in the record to inform this court as to whether Chui did or did not comply with the posting requirement. Sorrels has the burden of perfecting the record on appeal so that we have before us the information and evidence relevant to the issues he raises.[8] RAP 9.2(b). Because he failed to do so here, we hold that Sorrels's claims fail.[9]

---

[8] Similarly, Sorrels argues that the superior court erred by entering the final order ruling that his personal property was abandoned and permitting Chui to remove or dispose of the property. But this issue is moot because the record establishes that Chui sold the real property before the trial court entered the ruling that the personal property was abandoned. We can also glean from the record the fact that Sorrels has already commenced an action against the new owners involving the same disputed property. Furthermore, we cannot tell from the record whether the personal property still exists.

[9] Sorrels also argues that the authority Chui cites does not support the issuance of a writ of restitution. Sorrels is incorrect. Chui cited *Excelsior Mortgage Equity Fund II, LLC v. Schroeder*, 171 Wn. App. 333, 287 P.3d 21 (2012), *review denied*, 177 Wn.2d 1005 (2013), which stands for the proposition that a party who commences an unlawful detainer action (as Chui did here) may seek a writ of restitution as a mechanism to remove a defendant and/or a defendant's personal property.

## IV. DISMISSAL WITH PREJUDICE

Sorrels argues that the superior court's order granting summary judgment and dismissing his claims against Chui with prejudice was error because it was not a final judgment on the merits and, therefore, should have dismissed his claims without prejudice. Sorrels also contends that the court's separate "final judgment" order should not have dismissed his claims with prejudice. Sorrels contends that the trial court erred by entering the order granting summary judgment with prejudice before considering his motion to continue the summary judgment hearing. We disagree.

As explained above, the trial court acted within its discretion by refusing to consider Sorrels's motion to continue. And a motion for summary judgment is a request for a final ruling on the merits of a case. *League of Women Voters of Wash. v. King County Records, Elections & Licensing Servs. Div.*, 133 Wn. App. 374, 384, 135 P.3d 985 (2006). Sorrels cites no authority for the proposition that a superior court cannot summarily dismiss an entire complaint as to one party with prejudice.

Sorrels also claims that the superior court erred by entering the May 24 final judgment of dismissal with prejudice. But it was Sorrels's attorney who repeatedly indicated a willingness on Sorrels's behalf to dismiss the final remaining conversion claim with prejudice. Sorrels cites no authority suggesting that the court erred by honoring his attorney's request. We hold that Sorrels's claim fails.

## V. ATTORNEY FEES

Chui requests attorney fees and costs on appeal, arguing that he is entitled to such fees because Sorrels's appeal is frivolous. Like Sorrels's first appeal, Sorrels presents no legally

14

No. 45043-7-II

debatable issues or legitimate arguments for an extension of the law. Thus, we award fees and costs to Chui for defending a frivolous lawsuit. RAP 18.9(a).

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, C.J.

We concur:

MAXA, J.

LEE, J.

15